GEORGE BULLOCK, Plaintiff, *v.* JAMES S. COOLEY, as District Superintendent, Etc., Defendant.

(Supreme Court, Nassau Special Term, July, 1917.)

Education Law, § 129 — provisions as to boundaries of school districts — dissolution, reformation and consolidation of school districts — statutes.

School district No. 7, located on a neck of land known as Center Island, is separated from school district No. 9 in the town of Oyster Bay by the waters of Oyster Bay harbor and no portion of said body of water is specifically included within the boundaries of the two districts as described in the order of the school commissioner which describes the various school districts of the town of Oyster Bay as filed in the office of the town clerk in 1901. *Held,* that, for the purpose of carrying out the provisions of section 129 of the Education Law, relating to the dissolution, reformation and consolidation of school

districts, the boundaries of said two districts must be regarded as extending beyond the respective shore lines and meeting in the intervening body of water, and the two districts are "adjoining" within the meaning of said section 129 and the district superintendent was legally vested with power to dissolve district No. 7 and annex to its territory district No. 9.

Controversy as to validity of order dissolving a school district.

Davison & Underhill, for plaintiff.

Uterhart & Graham, for defendants.

Manning, J. This controversy concerns the validity of an order made by James S. Cooley as district superintendent of schools in the first district of Nassau county on the 7th day of December, 1916, by the terms of which order school district No. 7 was dissolved, and was annexed to the union free school district No. 9 (Oyster Bay), town of Oyster Bay, Nassau county, the main contention of the plaintiff being that the said district superintendent was without lawful power or authority to make the order complained of and that his act in so doing was illegal and void.

The defendant Cooley asserts the legality of his action in the premises and relies upon the provision of the Education Law of the state, section 129, as ample authority for the procedure which is complained of. The section of the statute reads as follows:

" § 129. *Dissolution, reformation and consolidation of districts.*— Any school commissioner may dissolve one or more districts, and may from such territory form a new district; he may also unite such territory or a portion thereof to any *adjoining school district,* except a union free school district whose boundaries are coterminus with the boundaries of an incorporated village or city."

He further relies upon section 397 of the Education Law whereby the district superintendent is vested with all the power, duties and responsibility with which a school commissioner is *charged by law*.

It appears that school district No. 9 is located in Oyster Bay town and that school district No. 7 is located on a neck or spur of land known as Center Island. It is an island in name only, however, being attached to or connected with the main shore by a long narrow sand bar. District number 7 lies directly to the north of district No. 9 and without doubt the two districts are made *adjoining* and *contiguous* by the waters of Oyster Bay harbor, which waterway at the narrowest point is about half a mile wide between the village of Oyster Bay and Center Island.

It further appears that while a small frame structure used as a school house is located on Center Island and in what was formerly known as district No. 7 the said district has not educated any children there nor has it furnished or maintained school facilities since 1913. Nor did the district furnish any accommodation for a teacher to board on the island. It is also made to appear that since September, 1912, the children of district No. 7 (who, by the way, are only seven or eight in number) have been receiving education in the school of district No. 9, pursuant to an agreement made by the school boards of districts No. 7 and No. 9, and the cost *per capita* has varied from eighteen dollars and fifty cents to forty dollars a year, the children being taken from their homes to school by autos. Again, the children of district No. 7 while attending school in No. 9 have had very many advantages not obtainable in district No. 7, among others, that of being housed in a modern school building, and having the benefit of instruction by a staff of twenty-eight teachers.

These conditions having existed for the time mentioned and their importance being recognized by the authorities whose duty it was to assume control of the details of the educational system of the county, an investigation was made by an inspector of the state department of education, who submitted a report covering the situation, and recommended the consolidation of the two districts.

The state department of education thereupon suggested the action which was subsequently taken by Superintendent Cooley and so districts No. 7 and No. 9 were consolidated, and upon appeal the action of Commissioner Cooley was sustained by the state department of education whose counsel appeared in this suit and filed a separate brief as *amicus curiæ*

The plaintiff's contention is that school districts No. 7 and No. 9 are not " *adjoining* " *districts* within the meaning of section 129 of the Education Law, and that the district superintendent was therefore without power or authority to dissolve district No. 7 and annex the territory formerly comprising that district to school district No. 9 thereby forcing together with other territory a new district designated as union free school district No. 9 of the town of Oyster Bay.

As heretofore stated, district No. 7 is separated from district No. 9 by the waters of Oyster Bay harbor, which waterway varies in width from one-half a mile to one mile between the two districts. No portion of this body of water is specifically included within the boundaries of the two districts as described in the order of the school commissioner which describes the various school districts of the town of Oyster Bay as filed in office of the town clerk in 1901. And the argument is accordingly made that the two districts referred to, Nos. 7 and 9, *are not adjoining because of this intervening body of water* which is not specific-

ally included within the designated boundaries of either district.

I am not impressed with the force or soundness of the argument.

If the contention be logical then it would reasonably follow that a considerable portion of the state would be entirely excluded from school districts and educational supervision. If a body of water of the character of Oyster Bay harbor may not be included within the limits of a school district, why may not a river, or creek, a mountain or even a hill be likewise excluded?

Plaintiff suggests that it is not necessary that such a body of water be within the limits of a school district because no one can live there. The same objection would apply to the river, the creek or the hill.

As I view the law every portion of the state including the waters thereof must, for the purpose of the exercise of civil jurisdiction and the administration of the education laws, be embraced within the boundaries of *some school district*.

Formerly school districts were coextensive with assembly districts. *Democratic County Committee* v. *Republican County Committee*, 74 Hun, 76.

The Laws of 1864, chap. 555, title 6, section 1, provides that it shall be the duty of each school commissioner to divide the territory within his district " *so far as practicable* " into a convenient number of school districts, and the claim is urged that, because the commissioner failed to include Oyster Bay harbor within the specifically defined boundaries of districts Nos. 7 and 9, such failure was a determination by him that it was *not practicable* so to do and hence there was an *intentional exclusion*.

I cannot see that any such result follows.

The boundaries as defined by the commissioner *are the shore lines of the land comprising both districts*

and the logical inference to be deduced is that the difficulty of accurately defining a precise boundary line was apparent to that official and it was this situation which he evidently regarded as *impracticable or at least of no importance.*

The legislative direction to divide the territory " *so far as practicable* " contemplated no doubt conditions where it might be impracticable to divide into any specific number of districts or to divide at all.

But assuming that no division at all were practicable the territory would still be within a *school district.* It would in fact and in law constitute *one* district.

The statute confers no power upon the commissioner to *so* divide as to exclude any portion of the territory from *all* districts.

I am inclined to the opinion that the reasoning of the court in *Mahler* v. *Norwich & New York Transp. Co.,* 35 N. Y. 356, is applicable in principle here and that the boundaries of the two districts, 7 and 9, for the purpose of carrying out the provisions of the Education Law must be regarded as extending beyond the respective shore lines and meeting in the intervening body of water. If this reasoning be correct and the two districts are adjoining then the district superintendent was legally vested with the power to dissolve district No. 7 and annex to its territory district No. 9. *Langto* v. *Raymond,* 90 App. Div. 614; Education Law, § 129.

Much has been said in the very able and instructive brief filed by the counsel for the plaintiff regarding the equities of the case and the fact that the action of the commissioner is not wise for or beneficial to a certain portion of the community. As to this phase of the controversy I am, of course, not called upon to render an opinion. There are also other points raised and ably discussed in the briefs presented by counsel con-

cerning plaintiff's right to maintain this action, and the effect to be given to the appeal made to the state commissioner of education, but the disposition of the case as made by me renders a discussion of these questions unnecessary.

The suit is brought squarely upon the theory that the action of the school authorities was in excess of their legal and jurisdictional powers and therefore null and void.

On this question I decide adversely to the plaintiff and direct judgment for the defendant dismissing the plaintiff's complaint on the merits, with costs.

Judgment accordingly.